Ⴤ SCOTT *against* FULLER.

It is essential to the right of a landlord to avail himself of the provisions of the "Landlord and Tenant act," by which to dispossess his tenant, who holds over, that a *certain rent* for the demised premises, was reserved.

"Under the rent of taking care of the grain of F. on the place, and keeping out the cattle," is so uncertain as that a proceeding before two justices, under that act, cannot be supported upon it.

ERROR to the Common Pleas of *Erie* county.

*Abizer Fuller* demised to *Charles Scott* a certain messuage and tract of land, for the term of twelve days, "under the rent of taking care of the grain of *Fuller* on the place, and keeping out the cattle." When the term was ended, *Fuller* applied to two justices, who issued their precept to the sheriff, commanding him to summon a jury, &c. in order to dispossess *Scott.* By this proceeding, under the "Landlord and Tenant act," *Scott* was dispossessed. He procured a *certiorari* to issue out of the Common Pleas, to remove the record, and assigned as an error in the proceedings, that there was no *certain* rent reserved within the meaning of the act of assembly. The court below, having affirmed the inquisition, the proceedings were removed to this court, where the same assignment of error was relied upon.

*Galbreath* for plaintiff in error, cited the 12th Sec. of the act of the 21st of March, 1772, *Purd.* 711. *Blashford* v. *Duncan,* 2 *Serg. & Rawle,* 480. *Warren* v. *Forney,* 13 *Serg. & Rawle,* 52.

*Wallace* for defendant in error.

The opinion of the court was delivered by

GIBSON, C. J.—It is certainly true, as argued for the defendant in error, that the rent need not be reserved in words which define its quantity, quality, and duration; but that it is within the terms of the act when it is susceptible of such certainty from extrinsic matters, as to enable the landlord to recover it. Where the con-

(Scott *v.* Fuller.)

tract affords reciprocal remedies, there can be little difficulty in pronouncing on the relation created by it; and this, as was intimated in *Blashford* v. *Duncan*, is all that the legislature intended to require. And this question of reciprocity, is determinable by the rules of the common law. A reservation is sufficient in this respect, wherever certainty can be had from circumstances *dehors;* as in the case put in *Co. Lit.* 96 a, of shearing all the sheep depasturing in the manor of the lord, because their number may be precisely ascertained. And such is the principle of *Shaffer* v. *Sutton,* in which the render, being payment of the taxes, and chinking and daubing the house, was susceptible of accurate ascertainment. But payment of a rent, which is uncertain by the terms of the lease, and incapable of being ascertained by reference to any thing else, cannot be enforced, either by distress or by action. Thus it was held in *Parker* v. *Harris,* 4 *Mod.* 77, that a reservation on a demise at will, "paying *after the rate* of £18 per annum," is bad; though it would seem from *Cole* v. *Surry, Latch.* 264, that if the nature of the rent were specified, the rest would be certain enough; and at this day, it would perhaps be taken for a sum of money payable yearly. But the case put by *Littleton, Sect.* 136, of the disability of the lord to distrain his tenant in *Frankalmoigne,* for omitting to perform divine services, uncertain both in time and number, is in principle the present case, in which the demise was for twelve days, and, in the words of the inquisition, "under the rent of taking care of the grain of *Fuller* on the place, and keeping out the cattle." What grain, and what cattle? The grain on the farm, doubtless. But that leaves the kind uncertain—whether wheat, rye, buckwheat, and oats; or pulse, barley, millet, spelt, and Indian corn; whether growing in the fields, or put up in shocks, or stowed away in barns, or deposited in garners; and whether it were to be protected from cattle only, or from vermin. The enclosures or places, too, out of which the cattle were to be kept, are altogether uncertain—whether the stables, the meadows, the fields lying fallow or with grain in them, or the open grounds. In common parlance, the words import a general care, so various in its application and so indefinite in its degree, that to enforce it by distress, would be impracticable. Nor could an action be maintained on the contract. In *Sherman* v. *Kitsmiller,* 17 *Serg. & Rawle,* 45, a promise, in consideration of service or marriage, to give "one hundred acres of land," without reference to any particular tract, was held void for uncertainty. Yet it was at least as definite as an undertaking to keep out cattle and take care of grain. Though a promise to give bond for £40, without specifying the penalty, has been held good, on the ground, that double the sum shall be intended, 1 *Lev.* 38, it has been determined that an undertaking to prepare

(Scott *v.* Fuller.)

a bond for performance of a covenant to pay two shillings the seam for such bark as the plaintiff should cut, is void, because the number of seams being uncertain, no particular sum can be intended. 1 *Sid.* 270. At this day the same degree of certainty would hardly be required; yet though the words of the party promising are to be taken most strongly against himself, and certainly to a common intent be all that is essential, the contract will be invalid, if it be not only uncertain in its terms, but incapable of deriving certainty from some thing else. It seems therefore, there was no reservation of any thing that could be recovered by action, or enforced by a distress; and that the landlord was not entitled to the summary remedy provided by the legislature.

Judgment of the Common Pleas reversed, and proceedings of the justices quashed.